IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| GREGORY RAY HOLMES | § | |
| VS. | § | CIVIL ACTION NO. 9:18cv230 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM OPINION

Petitioner Gregory Ray Holmes, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se,* filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Factual Background

An indictment was returned charging petitioner with possession of less than one gram of cocaine. Following a jury trial in the 159th District Court of Angelina County, Texas, petitioner was convicted of the offense with which he was charged. He was sentenced to seven years of imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Twelfth District. *Holmes v. State*, No. 2-16-00302-CR (Tex.App.-Tyler, 2017). Petitioner did not file a petition for discretionary review.

Petitioner subsequently filed a state application for writ of habeas corpus. The Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing.

Grounds for Review

Petitioner asserts the following grounds for review: (a) the prosecution presented false testimony and evidence regarding the extraneous offense of possession of methamphetamine and (b) he received ineffective assistance of counsel because counsel: (1) failed to investigate and was ineffective during the pretrial state of the proceedings; (2) failed to impeach testimony and (3) had a constructive conflict of interest.

Evidence at Trial

In its opinion, the court of appeals described the evidence in this matter as follows:

Officer Quinton McClure of the Lufkin Police Department was patrolling at 1:00 a.m. on October 20, 2015. At Lucky's Convenience Store, he noticed a GMC truck parked at a gas pump. The truck had one door open and no one in or about the vehicle. A routine check of the truck's license plate revealed that the license plate was for a Ford F150 truck, not the GMC truck. Officer McClure saw Appellant inside the store. In response to the officer's inquiries, Appellant identified himself as the truck's owner. He told Officer McClure that he recently bought the truck. The license plates, he said, were the same ones that were on the truck when he bought it. In attempting to verify whether Appellant had a valid driver's license, Officer McClure discovered Appellant's license had been suspended and there were three active arrest warrants for Appellant for class "C" misdemeanors. Officer McClure place Appellant under arrest.

The truck had not been stolen. Officer McClure gave Appellant the opportunity to call someone to whom they could release the truck rather than tow it to the police department. The officer called several numbers the Appellant gave him, but could not find anyone to whom the truck could be released.

Because the truck had to be towed, Officer McClure began a routine inventory of its contents. He saw a clear plastic bag, containing a white substance, in plain view on the floor in front of the console. Officer McClure thought the white substance was probably cocaine. Next to the plastic bag, but not so easily seen, he found a Mentos gum box containing what he thought was crack cocaine. Field tests confirmed the substance in the Mentos gum box was cocaine. However, the substance in the clear plastic bad was methamphetamine. Officer McClure also found baggies, and [a] straw that he believed to be the type used to snort cocaine. Laboratory analysis showed the crack cocaine found in the Mentos box weighed 0.4 grams.

Standard of Review

Title 28 U.S.C. § 2254 authorizes a district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case

differently than the Supreme Court has on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id*.

In addition, this court must accept as correct any factual determination made by the state courts unless the presumption of correctness is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").

Analysis

*Actions by the Prosecutor*

As indicated above, evidence and testimony regarding methamphetamine found in petitioner's truck was introduced at trial. Petitioner asserts the prosecutor knew that such testimony was false. The testimony petitioner states was false was provided by Officer McClure and Caroline Allen. He states that Officer McClure testified the field test he performed indicated the substance tested positive for methamphetamine. Ms. Allen, the forensic scientist who tested the substance testified that the substance was positively identified as a trace net weight of methamphetamine.

Petitioner asserts this testimony was false because a lab report showed that the substance was not tested. He states the lab report regarding the methamphetamine was not introduced into evidence.

A conviction obtained through the use of evidence known to be false by the prosecution violates the Due Process Clause of the Fifth Amendment to the Constitution. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). This principle applies regardless of whether the prosecution affirmatively offered false testimony or merely permitted false testimony to go uncorrected. *Id*. To establish a violation of the Constitution based upon the knowing use of false testimony, a petitioner must show: (a) the testimony at issue was false; (b) the prosecutor knew the testimony was false and nontheless permitted it to go unchallenged and (c) the testimony was material. *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998).

A review of the record reveals that the testimony petitioner describes was not false. Officer McClure testified that he field tested the substance found in the car. He stated that the substance tested positive for the presence of methamphetamine. There is no indication either that Officer McClure did not perform a field test or that the result of the field test was not positive.

Ms. Allen testified that she positively identified a trace net weight of methamphetamine. The prosecution stated it was not introducing the substance itself or the lab analysis regarding that substance into evidence.

Petitioner attached a copy of the laboratory report, which was admitted as Exhibit 9, as an exhibit to his state application for writ of habeas corpus. The report provided no analysis for the substance identified as being methamphetamine. However, the report does not state a test was performed that revealed a negative result. The report does not contradict Ms. Allen's testimony that there was a trace net weight of methamphetamine. Moreover, the respondent has attached to the answer to the petition another laboratory report prepared by Ms. Allen. This report is dated September 21, 2016. The report provided by petitioner is dated December 15, 2015. The report prepared in September stated that the substance contained a trace net weight of methamphetamine.

The report prepared in December gives no indication that the substance was tested at all. The report prepared in September supports the testimony of Ms. Allen. As the December report does not contradict Ms. Allen's testimony and as the September report supports her testimony, it cannot be concluded that Ms. Allen testified falsely.

The record does not support the conclusion that either Officer McClure or Ms. Allen provided false testimony. As a result, this ground for review is without merit.[1]

*Ineffective Assistance of Counsel*

A.  Legal Standard

In order to establish an ineffective assistance of counsel claim, a petitioner must prove counsel's performance was deficient, and that the deficient performance prejudiced petitioner's defense. *Strickland v. Washington*, 466 U.S. 668 (1984). As a petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Id.*; *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption that counsel provided reasonably effective assistance, a petitioner must prove counsel's performance was objectively unreasonable in light of the facts of the case. *Strickland*, 466 U.S. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, a petitioner must also show prejudice resulting from the inadequate performance. *Strickland*, 466 U.S. at 691-92. A petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

---

[1]  The conclusion that this ground for review is without merit pretermits consideration of the respondent's assertion that this ground for review has been procedurally defaulted.

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A petitioner must show a substantial likelihood that the result would have been different if counsel had performed competently. *Harrington v. Richter*, 562 U.S. at 110.

B. Application

1. Failure to Investigate and Ineffectiveness Prior to Trial

Petitioner faults counsel for failing to conduct an investigation into certain physical evidence. He states counsel never had the substance found in the clear plastic bag tested to see if it was methamphetamine.

Petitioner has provided no evidence demonstrating that the substance in the clear plastic bag was not methamphetamine. In the absence of such evidence, and in list of the positive result contained in the report prepared in September, 2016, it cannot be concluded petitioner suffered prejudice as a result of counsel not having the evidence tested. As petitioner has failed to show he suffered prejudice as a result of counsel's alleged failure to investigate, this ground for review is without merit.

2. Failure to Impeach Testimony

Petitioner states counsel failed to impeach the testimony of Officer McClure and Ms. Allen that the substance in the clear plastic bag was methamphetamine.

As described above, Officer McClure testified his field test indicated that the substance was methamphetamine. It is not clear how counsel could have impeached this testimony. Petitioner has therefore failed to show that counsel's failure to impeach the officer fell below an objective standard of reasonableness or resulted in prejudice.

Ms. Allen testified that the substance was methamphetamine. The exhibit introduced into evidence by the prosecution did not contain any analysis of the substance and did not state it was methamphetamine. Perhaps counsel could have asked Ms. Allen why the exhibit did not state the substance was methamphetamine. But, in light of the laboratory report prepared in September, 2016, it is likely she would have stated that testing that was not described on the report introduced into

evidence revealed the substance was methamphetamine. Such an answer would have made things worse for petitioner. Moreover, the report admitted into evidence did not state that the substance was not methamphetamine.

It is not clear that any response Ms. Allen would have given to counsel's attempt to impeach her would have been beneficial to petitioner. Her response is more likely to have been been counterproductive. In the absence of any indication that Ms. Allen's response to any questions about the laboratory report would have assisted the defense, it cannot be concluded counsel's failure to impeach caused petitioner to suffer prejudice.

  3. <u>Constructive Conflict of Interest</u>

Finally, petitioner asserts counsel was subject to a conflict of interest during trial. He states counsel knew he would be employed by the district attorney's office following the trial. He also asserts that counsel, while employed by the district attorney, may have interfered with his direct appeal.

In connection with petitioner's state application for writ of habeas corpus, petitioner's trial counsel, John A. Perato, submitted an affidavit. The affidavit provides, in part, as follows:

> Counsel was employed by the Angelina County District Attorney's Office from approximately November of 2014 to September of 2015. The elected District Attorney at that time was Art. Bauereiss.
>
> From approximately September of 2015 to December 31, 2006, Counsel was engaged in the private practice of law. Counsel's practice was comprised almost entirely of criminal defense matters.
>
> In November of 2016, Joseph Martin was elected to succeed Mr. Bauereiss as District Attorney. Mr. Martin took his oath of office and assumed his duties on January 1, 2017. Prior to that time, Mr. Martin had no legal authority to perform any of the duties of the District Attorney–including extending any offers of employment. Only one prosecutor from Mr. Bauereiss' office remained employed after Mr. Martin took office.
>
> Between Mr. Martin's election and [the] date he took the oath of office, Counsel and Mr. Martin had conversations concerning Counsel's joining the District Attorney's Office in January of 2017. Mr. Martin was clear that these were just preliminary discussions and that he had no authority to make any formal job offer nor could he enter into any agreement concerning my employment. Counsel expressed an interest in joining the District Attorney's Office in January of 2017.

> On January 1, 2017, Counsel was formally offered the position of First Assistant District Attorney by Mr. Martin and accepted the said offer. Counsel's first day in the office was on January 2, 2017.
>
> One of the first duties Counsel was asked to perform was to compile a list of all of his pending and former criminal defense clients. Once this list was completed, it was provided to the office staff with instruction that all pending matters, and any matters arising in the future, that involved any of Counsel's current or former clients were to be assigned to another prosecutor in the office. All attorneys and staff were informed that Counsel was to have no involvement in any of these matters. In addition, the defense attorneys who inherited Counsel's prior clients were informed of the circumstances and our office's newly instituted procedures and were given the option of requesting a Special Prosecutor be appointed to prosecute those cases.
>
> From the time of Counsel's first conversation with Mr. Martin about joining the District Attorney's Office to the present, Counsel has never divulged any privileged or confidential attorney-client information to any prosecutor or staff member with the District Attorney's Office, or to any Special Prosecutor assigned to prosecute his former clients. In addition, during that time Counsel has never seen the contents of any prosecutorial file concerning the prosecution or appeal of any case involving his former clients.
>
> As set forth in detail above, after Counsel joined the District Attorney's Office on January 1, 2017, procedures were put in place creating a "Chinese Wall" between Counsel and any matters involving his former clients. Procedures were also instituted to prevent any disclosure of privileged or confidential attorney-client information. These polices were adhered to scrupulously. Specifically, Counsel had no conversation with ADA Amy Greenbaum, or any other member of the District Attorney's Office, concerning the appeal of this case. Nor did Counsel ever see the State's appellate file in this case. To this date, Counsel is unaware of the points of errors raised by Mr. Holmes on appeal.

Amy Greenbaum, the assistant district attorney who handled the appeal regarding petitioner's conviction also submitted an affidavit. Ms. Greenbaum stated:

> On June 8, 2017, I filed a State's Brief in *George Ray Holmes v. State of Texas*, Cause No. 12-16-00302-CR. I kept all appellate files secured in my office. I did not have communications with Mr. Peralta regarding Applicant's case during the pendency of Applicant's appeal. Due to our active docket and heavy case load, I generally worked on briefs after regular duty hours. At those hours, Mr. Peralta was either already gone for the day or in the 217th courtroom for Drug Court.
>
> Furthermore, District Attorney Joe Martin had a policy in place where former defense attorneys that joined his staff would be completely walled-off from cases involving defendants they previously represented. This policy was honored and taken seriously. Mr. Peralta was completely walled-off of Applicant's case file, to include his appellate file. We never spoke about Applicant's case or his pending appeal.
>
> Accordingly, I, Amy L. Greenbaum, did not have any communications with Mr. Peralta regarding Applicant's case during the pendency of Applicant's appeal.

8

In connection with petitioner's state application for writ of habeas corpus, the state habeas trial court made findings of fact and conclusions of law. The court found that trial counsel had no formal offer of employment as an assistant district attorney prior to or during the trial of the case. The court further found that trial counsel and the assistant district attorney who prosecuted petitioner's appeal did not communicate prior to or during the course of petitioner's direct appeal. The findings of the state habeas trial court were not unreasonable in light of the evidence before it. The findings are entitled to a presumption of correctness which petitioner has failed to reubt by clear and convincing evidence.

In light of the findings set forth above, petitioner has failed to demonstrate counsel was subject to a conflict of interest at the time of trial or that he took actions that were contrary to petitioner's legal interests. Nor has he attempted to explain what actions counsel would have taken if he had not been subject to a conflict of interest or shown how he was prejudiced by the alleged conflict of interest. As a result, this ground for review does not entitle petitioner to relief.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus is without merit. A final judgment will be entered denying the petition.

In addition, the court is of the opinion petitioner is not entitled to a certificate of appealability in this matter. An appeal from a judgment denying federal habeas relief may not proceed unless a judge issues a certificate of appealability. 28 U.S.C. § 2253. The standard for a certificate of appealablilty requires the petitioner to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84; *Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004). To make a substantial showing, the petitioner need not demonstrate that he would prevail on the merits. Rather, he must demonstrate that the issues he raised are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84. Any doubt regarding whether to grant a certificate of appealability should be resolved in favor of

the petitioner and the severity of the penalty may be considered in making this determination. *See Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000).

In this case, the petitioner has not shown that the issues he raised are subject to debate among jurists of reason. The factual and legal issues raised by petitioner have been consistently resolved adversely to his position and the questions presented are not worthy of encouragement to proceed further. As a result, a certificate of appealability shall not issue.

**SIGNED** this the **30** day of **August, 2021.**

_____
Thad Heartfield
United States District Judge

10